UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| POLYCON INDUSTRIES, INC., | |
| Plaintiff, | |
| v. | Cause No. 2:19-CV-485-PPS-JPK |
| R&B PLASTICS MACHINERY, LLC, and MONROE MOLD, LLC, | |
| Defendants. | |

OPINION AND ORDER

This case arises out of a dispute between Plaintiff Polycon Industries, Inc. and Defendants R&B Plastics Machinery and Monroe Mold, LLC. R&B agreed to design, build, and sell two plastic molding machines to Polycon for $5 million. Despite R&B's written and oral assurances that the machines would be "new," Polycon asserts it was cheated because one of the parts used to build one of the machines—a motor—was not in fact new but instead repurposed. According to Polycon, that machine never operated properly causing it a large loss.

There are many counts to the First Amended Complaint but the only one presently before me in the Defendant's Motion for Partial Summary Judgment is the validity of Polycon's claim of fraud in the inducement. R&B argues it is entitled to summary judgment on that claim because Polycon failed to support its claim with evidence that R&B misrepresented a past or existing fact at the time the contract was signed. In other words, R&B claims there is no evidence that, when it negotiated with

Polycon for the sale of the machines, that it knowingly lied about its intention to provide new machines. I agree with R&B. Because there is no evidence that R&B was planning to sell Polycon used machines at the time the contract was entered, there is no evidence of fraud in the inducement. Partial summary judgment will therefore be granted on this claim.

## Background

Polycon manufactures plastic bottles and containers. In 2015, Polycon negotiated with R&B for the purchase of two machines to expand its manufacturing capacity: the "4/11 machine" and "8/16 machine." This motion only relates to the 8/16 machine, so the 4/11 machine need not be discussed. On October 22, 2015, R&B sent a proposal letter to Polycon which described a "new" 8/16 machine. I put the word new in quotes because that is precisely the term that R&B used in its proposal letter. About a month later, the parties met to discuss the potential purchase. Polycon alleges that R&B reiterated its promise that the 8/16 machine would be completely newly manufactured and would include all new parts. Then, on March 4, 2016, R&B sent Polycon an amended proposal detailing the 8/16 machine's specifications, components, and delivery estimate. In April 2016, the parties officially signed the contract which included an express warranty that the equipment would be "new."

According to R&B, it negotiated and built the machine with every intention of the machine being constructed with new parts. [DE 78.] As part of the assembly process, R&B purchased a new servo motor for installation into the machine from its supplier McNaughton-McKay Electrical Company. R&B tells me that a few months

2

after it purchased the new servo motors from the supplier, one of the servo motors was unusually loud. R&B contacted the supplier for a replacement and the supplier informed R&B that no new servo motors were in stock. Because time was of the essence, R&B decided to accept a service stock replacement servo motor in place of a new servo motor, and that replacement motor was used in the machine that was ultimately delivered to Polycon. The replacement servo motor carried the same manufacturer's warranty as the new motor.

According to Polycon, the machines were built with used components, delivered late, frequently broke down leading to idling of its production and costly repair work, and required multiple employees to maintain the machines. But more to the point for present purposes, Polycon claims in Claim H of its First Amended Complaint that R&B knowingly made false statements about the quality of the machine to induce it to enter into the agreement in the first place; in other words, R&B represented that the machines would be "new" when R&B knew they would not. This is Polycon's "Fraud in the Inducement" claim. [DE 39 at 13.]

Polycon sued in state court and R&B removed it on the basis of diversity jurisdiction. [DE 1, 6.] R&B filed a motion to dismiss for failure to state a claim [DE 18], and instead of filing a response, Polycon amended its complaint. [DE 39.] The First Amended Complaint alleges four claims against R&B: 1) breach of contract as it relates to both machines; 2) breach of express warranty; 3) first party indemnity; and as noted 4) fraud in the inducement. *Id.* It also alleges various claims against a second defendant, Monroe Mold, LLC, but those are not presently before me. In this motion,

3

R&B moves for summary judgment only on the claim for fraud in the inducement. [DE 77.]

## Motion to Strike

I will first address Polycon's Motion to Strike R&B's President and General Manager Fred Piercy's declaration. [DE 87, 78-2.] Polycon argues that Mr. Piercy's declaration is made without personal knowledge and is hearsay. Specifically, Polycon wants to strike the following statements in the declaration: (1) that new component parts were initially purchased to build the two machines; (2) that the 8/16 machine was assembled with new components and R&B purchased a new servo motor on July 7, 2016; (3) that R&B personnel told Mr. Piercy about the machine making unusual noises and R&B contacted its supplier for a new servo motor but none were in stock; and (4) the replacement service stock servo motor had the same warranty as the new servo motor. [DE 87; DE 78-2.] R&B argues that either the business records exception applies or that the statements are not hearsay, in that the statements are not being offered for the truth of the matter asserted. [DE 90.]

Declarations must be made with personal knowledge and should include facts admissible in evidence and state that the declarant is competent to testify regarding the matters in the declaration. FED. R. CIV. P. 56(e). Mr. Piercy's declaration meets these requirements, and the attached exhibits provide sufficient further foundation for his testimony. But before diving into the specific statements at issue, let's step back and give some perspective. Mr. Piercy is the president and general manager at R&B. [DE 89-1 at 5.] He oversees the general business and day-to-day operations of the company.

4

*Id.* In fact, he has an ownership interest in R&B. *Id.* So, it is not at all surprising that he is well familiar with the two machines that his own company manufactured for Polycon. *Id.* at 6. He had personal involvement in the procurement of parts from R&B's suppliers because he oversees the staff that handles procurement. *Id.* at 7.

In his declaration, Mr. Piercy testified extensively about his personal knowledge of the transaction relating to the defective new servo motor that was originally placed in the machine destined for Polycon. [DE 78-2.] He believed this first motor was new because, as he testified in his deposition, when R&B orders parts from its suppliers, he presumes the part will be new unless the supplier tells him otherwise. [DE 89-1 at 11.] According to Mr. Piercy, problems arose when that first motor began to make an unusual noise, so R&B tried to get a replacement motor; none were available. [DE 78-2 at 3.] So instead, they used a service stock replacement motor. *Id.* That replacement motor came with the same warranty as the first motor. *Id.*

Mr. Piercy attached business records to his affidavit to corroborate much of his testimony. *Id.* Those records confirm that the original motor, acquired on July 7, 2016, was in fact new. [78-2 at 8.] The records further show a replacement motor was received by R&B in November 2016. [DE 78-2 at 11.] An email confirms it. *Id.* at 13. It is true that in his subsequent deposition, Mr. Piercy hedged when he said it was only "possible" that he talked with the supplier of the motor but that he could not recall specific conversations. [DE 89-1 at 6-8.] But I fail to see how that leads to a conclusion that his entire declaration must be stricken. The uncertainty in his deposition simply

5

goes to the weight of all his testimony—both in his declaration and the snippets of deposition I have been provided—not to the admissibility of his declaration in total.

Mr. Piercy's testimony in his declaration was based both on personal knowledge and from his review of R&B's business records. First, there are sufficient facts in the declaration to support a finding that the statements he made were based on his personal knowledge. His statements regarding contract negotiations and interactions with R&B's supplier are adequately supported by his background as owner, president, and general manager. He participated in contract negotiations and managed the ordering and assembly of the machine, all of which are the subject matter of his sworn statements. Just because Mr. Piercy did not directly place the original or replacement order with its supplier does not mean that he lacked personal knowledge of those calls. These statements are admissible evidence because they derive from Mr. Piercy's familiarity with his own company's records. And, of course, business records, such as orders with a supplier, are admissible when authenticated by a custodian. FED. R. EVID. 803(6); *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). As R&B's custodian, Mr. Piercy was familiar with the record keeping practice and does not need to personally make calls to the supplier in order to testify about those records. *See Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 686 (7th Cir. 2015). And those business records tell most of the story here.

What's more, many of the other challenged statements are not offered for the truth of the matter asserted and are therefore not hearsay at all. FED. R. EVID. 801. For example, the statement that the first servo motor was noisy was likely told to Mr. Piercy

6

by someone else. But that statement isn't being offered to prove the truth of the matter asserted but instead to show why R&B ordered a replacement motor as shown in the business records. Polycon also quibbles over whether Mr. Piercy or someone else made the call to the supplier to reorder. I fail to see the relevance of this. Mr. Piercy plainly knew it occurred from the business record he attached to his declaration.

Finally, Polycon also challenges Mr. Piercy's statement that when his company orders parts, it presumes the parts will be new, unless they are told otherwise by the supplier. This isn't an out of court statement at all. It is simply a statement as to how R&B views its relationship with suppliers. As the president and general manager of R&B, Mr. Piercy is certainly qualified to testify about what the business practice is at R&B in how they deal with their suppliers. In any event, I fail to see why it should be stricken on the grounds that it is hearsay.

In sum, based on Mr. Piercy's background and experience as the president and general manager of R&B, as well as the business records attached to his declaration, and for the other reasons noted above, Polycon's Motion to Strike Mr. Piercy's Declaration is DENIED. Finally, while R&B's supplemental evidence supports the factual conclusion I just reached, I need not rely on it. As a result, R&B's Motion to Supplement, [DE 99], will be DENIED AS MOOT.

## Discussion

Summary judgment will be granted only when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). At this stage, I construe all facts and reasonable inferences drawn from those

facts in favor of the non-moving party. *Hackett v. City of South Bend*, 956 F.3d 504, 507 (7th Cir. 2020) (internal citation and quotations omitted). The non-moving party may not rely merely on allegations or denials in its own pleading, but rather must "present the court with the evidence [it] contends will prove [its] case." *Goodman v. NSA, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The non-moving party may present evidence in the form of affidavits, depositions, answers to interrogatories, and admissions to show a genuine issue for trial. *Celotex v. Catrett*, 477 U.S. 317, 324 (1986). "A party must present more than mere speculation or conjecture to defeat a summary judgment motion." *FKFJ, Inc. v. Vill. of Worth,* 11 F.4th 574, 585 (7th Cir. 2021) (internal quotations and citation omitted).

To state a claim for fraud in the inducement, Indiana courts require a plaintiff to plead "(1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of." *Lawyers Title Ins. Corp. v. Pokraka*, 595 N.E.2d 244, 249 (Ind. 1992).

Instead of discussing fraud in the inducement, Polycon spends much of its briefing discussing a different cause of action, and one that it didn't plead: constructive fraud. Although Polycon tries to convince me that constructive fraud and fraud in the inducement are one and the same, they plainly are not. [DE 88 at 9-10.] They are related, but distinct causes of action. *Butler v. Symmergy Clinic, PC*, 158 N.E.3d 407, 412 (Ind. Ct. App. 2020). In contrast to a claim of fraud in the inducement, a claim for

8

constructive fraud requires: "1) a duty owing by the party to be charged to the complaining party due to their relationship; 2) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when the duty to speak exists; 3) reliance thereon by the complaining party; 4) injury to the complaining party as a proximate result thereof; and 5) the gaining of an advantage by the party to be charged at the expense of the complaining party." *Id.*; *see also Heyser v. Noble Roman's, Inc.*, 933 N.E.2d 16, 19-20 (Ind. Ct. App. 2010), *reh'g denied, trans. denied*.

The claims of fraud in the inducement and constructive fraud are different as well, relative to remedies: "[u]nlike [] constructive fraud, a plaintiff who prevails on a claim for fraud in the inducement must elect between two remedies: either rescind the contract, return any benefits received, and be returned to the status quo, or affirm the contract, retain the benefits, and seek damages." *Pain Ctr. of SE Ind., LLC v. Origin Healthcare Sols. LLC,* 2014 U.S. Dist. LEXIS 166859, at *12 (S.D. Ind. 2014) (citing *Lightning Litho, Inc. v. Danka Indus., Inc.*, 776 N.E.2d 1238, 1241 (Ind. Ct. App. 2002)).

I'll return to the newly raised constructive fraud theory in a moment, but let's start with the fraud in the inducement claim since that was the claim specifically identified in Polycon's First Amended Complaint. [DE 39 at 13.] It's worth noting at the outset just how clear Polycon was in the First Amended Complaint on this point. Claim H is delineated as "Fraud in the Inducement" leaving little room for doubt what its theory was. *Id.* Under that theory, Polycon alleged that R&B misrepresented that the machine would be "new" in both a proposal letter dated October 22, 2015, and during a

9

subsequent November 2015 meeting to discuss the purchase of the machine. [DE 39 at 13.]

As I previously discussed in my opinion on the motion to dismiss [DE 58], to succeed on a claim of fraud in the inducement, Polycon must prove that the misrepresentation was made either with R&B's actual knowledge or with reckless ignorance as to its truth or falsity. *Butler,* 158 N.E.3d at 412. Reckless ignorance must be "more than mere carelessness, negligence, or mistake of fact," such that R&B had a "high degree of awareness" of the material misrepresentation, "failed to inquire further and remained willfully ignorant." *Spainhower v. Smart & Kessler, LLC,* 176 N.E.3d 258, 266 (Ind. Ct. App. 2021) (citing *Shine v. Loomis*, 836 N.E.2d 952, 958-59 (Ind. Ct. App. 2005), *reh'g denied, trans. denied*). In other words, a claim of fraud in the inducement does not depend on the existence of a defect or an alleged defect in the goods sold by R&B. Instead, it only involves the contractual relationship between Polycon and R&B, and whether Polycon was fraudulently induced to enter that relationship.

So, the question is whether R&B knew the machine wasn't going to be "new" when it made the representations to Polycon. As I cautioned Polycon in my opinion on the Motion to Dismiss, to get the case to a jury, Polycon would have to prove that at the time R&B told them the machine would be new, R&B in fact knew that the machine would be comprised of used parts. [DE 58.] Polycon has presented no such evidence. Instead, Polycon tries to flip the script claiming that "R&B simply has not shown and cannot show that it intended to build the 8/16 only with new parts at the time it promised that the 8/16 would be compromised of only new parts." [DE 88 at 14.] That's

10

not how it works.  R&B has presented evidence that it did not knowingly make a material misstatement as to a past or existing fact when it signed the agreement with Polycon. The burden then shifts to Polycon to present evidence to the contrary. This is because once a party seeking summary judgment meets its initial burden, the party opposing summary judgment "must make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex*, 477 U.S. at 323. If the nonmoving party fails to do so, summary judgment must be granted in favor of the moving party. *Id.*

In sum, R&B has presented evidence that it had every intention of building a new machine for Polycon when it was negotiating the contract. Indeed, R&B *did* build a new machine but when it tested the completed machine in November 2016, about a year after the contract was negotiated, it had concerns that the new servo motor may be defective and made the decision to switch out the new servo motor for a service stock replacement one. In response, Polycon points to no evidence that R&B knew at the time they were negotiating the contract that R&B intended to employ used parts in the machine it was building.  Therefore, summary judgment on the fraud in the inducement claim will be granted.

Perhaps recognizing that its claim for fraudulent inducement is dead on arrival, Polycon pivots and argues instead that a constructive fraud has occurred. This is a new theory. It wasn't mentioned in the First Amended Complaint. What am I to make of this head fake? If this is nothing more than a change in legal theory, I have the discretion to overlook it.  This is because the Federal Rules of Civil Procedure do not require a

plaintiff to plead legal theories. *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014); *Lovelace v. Gibson,* 21 F.4th 481, 2021 U.S. App. LEXIS 37993, at *15 (7th Cir. 2021). Accordingly, when a plaintiff does plead legal theories, it can later alter those theories if, in the discretion of the court, doing so will not "unfairly harm the defendant or the case's development—for example, by making it 'more costly or difficult' to defend the case, or by causing unreasonable delay." *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017) (citing *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996)). On the other hand, "when a plaintiff changes its *factual* theory at the summary judgment" phase of litigation, that becomes problematic because it may amount, in essence, to a request to amend the complaint without seeking leave of court. *Chessie Logistics Co.,* 867 F.3d at 859. So, as the *Chessie* court counsels, "[w]hen a new argument is made in summary judgment briefing, the correct first step is to consider whether it changes the complaint's factual theory, or just the legal theories plaintiff has pursued so far." *Id.* at 860.

There is no doubt in my mind that Polycon has changed its legal theory and it has done so to the detriment of R&B. Although fraud in the inducement and constructive fraud are related, they are different in some important ways, as a review of the elements set out above make clear. The case that Polycon principally relies upon, *Scott v. Bodor, Inc.*, 571 N.E.2d 313 (Ind. Ct. App. 1991), proves the point. First, in *Scott,* the plaintiffs actually pled constructive fraud as their cause of action. More importantly, *Scott* distinguishes actual fraud (like fraud in the inducement) from constructive fraud. Unlike actual fraud, constructive fraud is "premised on the understanding that there

12

are situations which might not amount to actual fraud, but which are so likely to result in injustice that the law will find a fraud despite the absence of fraudulent intent." *Id.* at 324. The viability of the fraud claim has been kicking around this case since the Fall of 2020. If constructive fraud, as opposed to actual fraud, was Polycon's theory, they should have told someone. By raising the new legal theory at summary judgment, Polycon has "unfairly harm[ed] the defendant or the case's development" and "caus[ed] unreasonable delay." *Chessie Logistics Co.,* 867 F.3d at 859-60.

But let's set that aside for the moment. The real question is whether the new approach being espoused by Polycon on summary judgment is a change in its factual theory.  A review of the First Amended Complaint makes it clear that Polycon alleged that R&B sold them a bill of goods by promising a "new" machine when they knew in fact the machine would be made from repurposed parts.  The First Amended Complaint homes in on the October and November 2015 "false and fraudulent" statements made by R&B when the contract was being negotiated. [DE 39 at 14-15.]  It doesn't say a whiff about anything that took place nearly a year later. But now, in their summary judgment briefing, the focus is on events that happened months after the contract was signed and R&B chose to use a replacement part in the machine. This is an entirely different factual scenario than how matters were framed in the First Amended Complaint.  If constructive fraud was really their theory, Polycon should have moved to amend the complaint and allege why the facts demonstrate an entitlement to relief under that theory. Doing so at the summary judgment phase of litigation doesn't cut it.

**Conclusion**

Defendant R&B Plastics Machinery, LLC's Motion for Partial Summary Judgment regarding Polycon Industries, Inc.'s Claim for Fraud in the Inducement [DE 77] is **GRANTED**.

Plaintiff Polycon Industries, Inc.'s Motion to Strike [DE 87] is **DENIED**.

Defendant R&B Plastics Machinery, LLC's Motion to Supplement the Motion for Summary Judgment [DE 99] is **DENIED AS MOOT.**

SO ORDERED on February 10, 2022.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT