UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| POLYCON INDUSTRIES, INC., | ) |
| | ) |
| Plaintiff & Counter-Defendant, | ) |
| | ) |
| v. | ) Case No. 2:19-CV-485-PPS |
| | ) |
| R&B PLASTICS MACHINERY, LLC, | ) |
| and MONROE MOLD, LLC, | ) |
| | ) |
| Defendants & Counterclaimants. | ) |

### OPINION AND ORDER

This lawsuit involves three players in the plastic bottle manufacturing process. Two are relevant here. Plaintiff, Polycon Industries, Inc. manufactures "blow molded" plastic containers, and Defendant R&B Plastics Machinery, LLC designs and manufactures the machines that make those containers. The present litigation arises from Polycon's purchase of two machines from R&B for roughly $4.7 million. Polycon's basic contention is that the machines R&B delivered did not come close to meeting the specifications that were promised.

R&B has moved for partial summary judgment an exhausting three times in this case. [DE 77, DE 129, DE 174.] After I denied R&B's third attempt at partial summary judgment, concerning whether "successful operation" had occurred as defined in R&B's contract with Polycon [DE 236], R&B promptly filed a motion to reconsider [DE 243]. That is the motion presently before me. In its motion to reconsider, R&B argues that I did not consider undisputed extrinsic evidence and further, that I misunderstood its

1

arguments that the machines it sold to Polycon achieved "successful operation" as a matter of law. As I see it, these arguments are largely a rehash of arguments I considered in my prior ruling. The Motion to Reconsider [DE 243] will therefore be DENIED.

Additionally, within its motion to reconsider, R&B asks me in a somewhat elliptical way to toss out Polycon's breach of contract claim on the grounds that it cannot coexist with Polycon's breach of warranty claim. [*Id*. at 17–19; DE 238.] This argument is procedurally improper in its current form, so I decline to reach its merits. But it's a matter that can be raised in a separate motion for summary judgment or at trial.

## Discussion

Given the exhaustive briefing and rulings on R&B's three prior attempts at partial summary judgment, the previous two of which are relevant here, I will assume familiarity with my prior opinions which can be found on the record at DE 152 and DE 236. The most important context to remember here is that the agreement for R&B to sell two types of blow molding machines (the so-called "4/11" and "8/16" machines) to Polycon included a one-year Equipment Warranty Period that commenced upon the "successful operation" of those machines at Polycon's facility.

Polycon argues that "successful operation" has *never* occurred, meaning the warranty period has not yet been triggered. In its prior motion for partial summary judgment, R&B argued that "successful operation" occurred as a matter of law by no later than May 11, 2017. Central to this dispute over whether "successful operation"

occurred is the relevance of advertised bottle per minute ("BPM") output rates for the machines that were exchanged prior to sale. I will first consider R&B's arguments that squarely address my prior ruling on its motion for partial summary judgment before turning to the separate issue R&B has raised concerning whether Polycon's breach of contract and breach of warranty claims can coexist under Indiana law.

Let's start with the basics about when an issue can be reconsidered. Courts have broad discretionary authority to reconsider interlocutory orders any time before final judgment. *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015); *Galvan v. Norberg*, 678 F.3d 581, 586–88 (7th Cir. 2012). My opinion and order denying R&B's motion for partial summary judgment is not a final judgment because Polycon's claims remain pending. R&B does not cite a specific Federal Rule of Civil Procedure in its motion to reconsider, but most courts in this situation look to Federal Rule of Civil Procedure 54(b) as the starting point. Here's what it says, in part:

> . . . [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

A motion to reconsider is appropriate where: "(1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in law since the submission of the issues to the court; or (5) there has been

a controlling or significant change in the facts since the submission of the issue to the court." *Janky v. Batistatos*, No. 2:07–CV–339 PPS APR, 2009 WL 10692471, at *1 (N.D. Ind. Aug. 24, 2009) (quoting *Orange v. Burge*, 451 F.Supp.2d 957, 961 (N.D. Ill. 2006)); *see also Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

In short, a motion to reconsider is not a "do over" like mulligans used by golfers on Saturday mornings. Instead, they "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Mayes v. City of Hammond*, No. 2:03-cv-379-PRC, 2006 WL 2193048, at *1 (N.D. Ind. Aug. 1, 2006) (collecting cases).

## I. R&B's Motion to Reconsider "Successful Operation" Rulings

R&B first argues that I erred in finding that the term "successful operation" was ambiguous thus necessitating factual findings by a jury. According to R&B, I failed to consider undisputed extrinsic evidence that supports a finding that "successful operation" occurred no later than May 11, 2017.

As I acknowledged in my decision denying R&B's latest motion for partial summary judgment, in Indiana "[c]onstruction of the terms of a written contract generally is a pure question of law", but if "a contract is ambiguous, the parties may introduce extrinsic evidence of its meaning, and the interpretation becomes a question of fact." *Celadon Trucking Servs., Inc. v. Wilmoth*, 70 N.E.3d 833, 839 (Ind. Ct. App. 2017). Indeed, "[w]hen summary judgment is granted based on the construction of a written contract, the trial court has either determined as a matter of law that the contract is not

4

ambiguous or uncertain, *or that any contract ambiguity can be resolved without the aid of a factual determination.*" *Rusnak v. Brent Wagner Architects*, 55 N.E.3d 834, 840–41 (Ind. Ct. App. 2016) (emphasis added).

Thus, courts in Indiana are not *per se* barred from considering extrinsic evidence to interpret an ambiguous contract. The Indiana Supreme Court has recognized that "all relevant extrinsic evidence may properly be considered in resolving the ambiguity." *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 535 (Ind. 2006) (upholding summary judgment because there was "no conflicting evidence of [intent]" so therefore "no genuine issue of material fact.").

My opinion focused on whether the term "successful operation" in the Parties' Terms and Conditions of Sale agreement was ambiguous. I evaluated documents relevant to the Parties' interpretation of the term "successful operation" and concluded that the term was indeed ambiguous. [DE 236 at 11–16.] I acknowledge that my opinion did not analyze in detail each source of extrinsic evidence that R&B says undisputedly demonstrate that "successful operation" occurred by at least May 11, 2017. However, I reviewed these materials in reaching my conclusion and stand by my prior ruling because each piece of extrinsic evidence that R&B relies upon is, in fact, disputed or (in the case of the undisputed facts) does not resolve the key questions at issue. In short, they do not move the needle on understanding what "successful operation" means or even if or when it occurred.

Let's review the key pieces of extrinsic evidence that R&B relies upon. R&B primarily relies upon two purportedly undisputed facts to establish that, regardless of

5

its meaning, the 4/11 and 8/16 machines achieved "successful operation" by at least May 11, 2017. Regarding the first fact, I cited in my prior opinion Polycon's admission that it asked for and received "warranty repairs" to the 4/11 and 8/16 machines from January 2017 through May 2018. [DE 236 at 6 (citing DE 195 at ¶¶6–7).] According to R&B, this is an admission by Polycon that "successful operation" must have occurred at some date because the warranty only authorized warranty repairs for a one-year period to commence upon "successful operation." [DE 243 at 12 (quoting DE 185-3 at ¶3(a)).] Second, R&B argues that Polycon CFO and VP of Operations Bill Hansen admitted during his deposition that the R&B machines achieved "successful operation" at Polycon's facility by May 11, 2017. [DE 243 at 13 (citing DE 185-10 at 22–23).] As I did in my initial review of the record in resolving R&B's prior motion for partial summary judgment, I do not view either fact as dispositive.

Let's start with the Hansen deposition testimony. When read in context, Hansen's comments are far from a smoking gun on the date "successful operation" purportedly occurred. At the deposition, R&B's counsel showed Hansen a May 11, 2017, production report that showed the 8/16 machine producing Ecolab qualified containers at 70% capacity and the 4/11 machine at 80% capacity. Over the objection of Polycon's counsel, R&B's counsel asked whether this meant that R&B's machines "were operating successfully at Polycon's facility." [DE 185-10 at 23.] Hansen said "yes." [*Id.*] Let's be honest about it, this is hardly conclusive as to what the Parties' meant when they used the term "successful operation" *in their contract*, a term that strikes me as much more specific than the discussion in the deposition. On the contrary, in this

6

portion of Hansen's deposition he discussed the operation of R&B's machines at Polycon's facility in generic, colloquial terms. Crucially, R&B's counsel made no reference to the language of the warranty and what "successful operation" meant in that context. Hansen's conclusory comment simply does not clarify the ambiguity in that term or when it occurred.

Polycon's admission that it asked for and received warranty repairs from January 2017 through May 2018 presents a thornier question. At first glance, for Polycon to admit that it received "warranty repairs" suggests that the Equipment Warranty Period must have commenced. But this issue becomes messy once you begin to peel back a few layers. For starters, by nature of being a one-year warranty, the Equipment Warranty Period could not have covered repairs from January 2017 through May 2018. Polycon points out that R&B's argument leads to the nonsensical outcome that R&B began performing warranty repairs in January 2017, which is before R&B argues that successful operation occurred on May 11, 2017. [DE 247 at 8.]

Polycon argues that the repairs "were necessary to get the machines to operate at all", so therefore could not be considered evidence of "successful" operation but rather "operation" generally. [*Id*. at 8–9.] R&B responds that the four months of repairs prior to May 2017 were done to aid Polycon in producing qualified, saleable bottles to Ecolab. [DE 249 at 7 n.2.] Given the lack of a working definition of "successful operation", this muddied, contested record on both the types of repairs and the contractual provisions they were performed under leaves me in the dark. Polycon seems to argue that it accepted a mixed bag of repairs from R&B, some possibly under the Equipment

7

Warranty Period and others that were not because they were necessary for the machines to run in any capacity. But there are simply too many unanswered and disputed questions of fact for me to view this vague fact as case dispositive on this issue.

R&B also argues that it does not matter what "successful operation" means so long as I find that it occurred. To which I ask: how can I know if the machines achieved "successful operation" if I don't know what that term means in the first place? To do so would require at least an undisputed agreement of if and when "successful operation" occurred, which there is not. At best, I have a vague assertion by Polycon that it may have accepted warranty repairs. Moreover, R&B's claims that it "did not ask the Court to define 'successful operation'" and "[a] jury need not determine the meaning of 'successful operation'" fly in the face of comments R&B has explicitly made to the contrary. [DE 243 at 3, 13.] During the September 24, 2024, status conference on bifurcation, R&B told the Court that it viewed establishing a *definition* of successful operation as necessary to determining the start of the warranty period: "It's still necessary to establish the warranty period 'cause we still need a definition of successful operation to determine when the warranty period started." [DE 245 at 23.]

I understand that these comments were made after my issuance of the summary judgment opinion that R&B now moves to reconsider, but that does not change the fact that R&B has itself acknowledged the importance of defining and understanding "successful operation." In all events, I remain firm in my belief that the term is ambiguous, as is the question of if and when "successful operation" ever occurred. A stray comment in a deposition of a former Polycon executive that was not even in the

8

context of interpreting the language of the agreement is certainly not enough evidence for me to conclude, as a matter of law, that the extrinsic evidence undisputedly resolves the ambiguity.

This all relates to R&B's second argument in its motion to reconsider that the Court misunderstood R&B to be arguing that the 8/16 and 4/11 machines achieved "successful operation" by operating at 75% of the BPM output figures in the "Rotary Outputs" sheet. In fact, R&B tells me that "output rates have absolutely nothing to do with 'successful operation.'" [DE 243 at 11.] As I held in my earlier opinion denying R&B's second motion for summary judgment, this is yet another question of fact given the ambiguous nature of the term "successful operation": "a reasonable person could conclude that 'successful' operation requires more than mere 'operation' (without the adjective), including meeting expectations about the qualitative or quantitative performance of the machines." [DE 152 at 9.]

R&B's next argument boils down to its claim that R&B "did not guarantee any minimum output in the 'Rotary Outputs' sheet", a position which R&B says is supported by the undisputed factual record. [DE 243 at 15.] I understand R&B's argument that Polycon has the burden to put forth evidence demonstrating that "successful operation" required some BPM output. But as Polycon notes, and as was before me on summary judgment, there is ample disputed evidence that BPM output was indeed a basis of the Parties' bargain in some fashion, be it a guaranteed minimum or best-case scenario maximum. For example, even R&B's own engineer David Johnson acknowledged that the BPM rates R&B advertised would have been part of Polycon's

9

decision making process to purchase the machines. [DE 194-1 at 6–7.] Polycon has presented a genuine issue of material fact on the relevance of the "Rotary Outputs" sheet to the Parties' understanding of "successful operation." I am certainly not convinced that R&B has presented undisputed evidence that the "Rotary Outputs" sheet rates were utterly irrelevant to the Parties understanding of "successful operation" and did not guarantee some level of BPM production.

In sum, I remain convinced that the term "successful operation" is ambiguous. The Parties chose to insert this flabby language into their agreement without providing even a hint as to what it means. A jury will have to sort it out.

## II. R&B's Argument Concerning the Conflation of Polycon's Warranty and Contract Claims

This next question presents important, fundamental questions that go to the heart of this dispute and Polycon's claims. The matter is before me in an odd posture which I'll explain in a moment. In sum, R&B claims that Polycon's breach of contract claim relating to "successful operation" cannot coexist with the breach of warranty claim premised upon the same contractual language in the warranty. R&B tells me that it first learned of Polycon's breach of contract theory in August and September 2024, and that this is somehow a new "fact." Here's how the issue unfolded.

During an August 1, 2024, hearing on then pending motions for summary judgment (including the one R&B now seeks reconsideration of) and motions in limine, the discussion waded into the structure of the jury trial. [DE 234 at 110.] R&B's counsel indicated that if I denied their motion to "interpret successful operation as a matter of

law" (as I eventually did), they were in favor of a bifurcated trial to have a jury first decide the meaning of "successful operation" and whether it occurred. [*Id*. at 110–11.] I raised the possibility that a jury might decide successful operation never occurred and noted that this result would seem to alter the resultant second portion of a bifurcated trial. [*Id*. at 111.] R&B's lawyer noted "[t]here has to be a determination of when the warranty started" because "a breach [of warranty] has to occur during the warranty period." [*Id*.] According to R&B, under Indiana law there could be no breach of warranty unless the warranty period started, so Polycon's assertion that successful operation did not occur doomed its own warranty claim.

R&B explained that "months ago" they asked Polycon's counsel to clarify the difference between Polycon's breach of contract and breach of warranty claims. [*Id*. at 113.] According to R&B, any claim having to do with the performance of the machines or compliance with R&B's description of its machines were breaches of the warranty that described those expectations and performance. [*Id*.] R&B's counsel said it understood Polycon's breach of contract claim to be limited to the timeliness of the delivery of the machines under a separate provision of the contract. [*Id*.] R&B's counsel acknowledged that such a claim would constitute a permissible breach of contract claim independent of the warranty provision. [*Id*.]

I then asked Polycon to explain the differences between its two claims. [*Id*. at 115.] Polycon's counsel explained that "the failure to achieve successful operation constitutes a breach of the contract." [*Id*.] Polycon's counsel explained that the failure to achieve the output rates that were promised meant that the machines never

11

"successfully operated" as they construe that term. [*Id*. at 116.] Consequently, the warranty period never began, or so says Polycon. Polycon tells me that "successful operation" is a condition precedent to commencement of the warranty [DE 235 at 8 quoting DE 132-1 at 2.] In other words, the warranty period only comes into play if a jury (or the court) finds there had been "successful operation" of the machines on a particular date. [DE 235 at 12.] If a finder of fact determines that the machines never successfully operated, then the warranty claim would become a non-starter.

In its motion to reconsider, R&B touches on the issue of the conflation of Polycon's warranty and contract claims. [*See* DE 243 at 17–19.] R&B argues that Polycon did not have a viable contract claim against R&B because "the term on which Polycon relies for its contract claim is in the warranty." [*Id*. at 17.] In a new twist, R&B ties in its request for reconsideration on the "successful operation" issue because it argues that if this Court holds that "successful operation" never occurred then the warranty period never commenced which would leave Polycon without any remedy at all: there would be neither a warranty nor a contract claim. R&B argues it would be absurd for R&B to have agreed to an open-ended obligation to make warranty repairs before the warranty period started or, conversely, for Polycon to forgo having its equipment fixed under the warranty. To avoid these nonsensical results, R&B asks me to hold that the warranty period began (by holding that "successful operation" occurred as a matter of law) which would leave Polycon only with a valid warranty claim.

Polycon's response refutes that R&B's motion for reconsideration is the proper vehicle for such a request, which it characterizes as a "back door" motion for summary

judgment on Polycon's breach of contract claim. [DE 247 at 20.] Polycon then reiterates its view that the breach of contract claim stems from the failure of R&B to deliver the machines on time and in conformance with the specifications and representations R&B made, which includes the failure of the machines to achieve "successful operation." Polycon acknowledged that this claim assumes "the warranty never took effect." [*Id.* at 21.] Polycon argued that it pleaded the warranty claim "in the alternative in the event that the jury finds that the warranty period did begin", and Polycon again argued that the warranty failed of its essential purpose. [*Id.*]

R&B responds that it is not seeking summary judgment on Polycon's breach of contract claim, though it then requests the court to enter such judgment *sua sponte* or grant R&B leave to file such a motion. [DE 249 at 10, 12.] R&B argues, however, that its "key point" is that "'successful operation' should not be interpreted in a way to leave Polycon without any claim. [*Id.* at 12–13.] R&B also argues that Polycon's casting of its warranty and contract claims is new and not apparent from the face of Polycon's Amended Complaint.

I again reiterate with some frustration that R&B has brought this issue now *five years* after Polycon filed their First Amended Complaint on March 24, 2020. [DE 39.] I also acknowledge the difficulty of this issue and its many interwoven layers. Before I can begin to unravel this issue, I begin with the threshold question of whether R&B can raise this argument in a motion to reconsider, as here, or alternatively, whether I can (and should) resolve this question *sua sponte* under Rule 56(f)(3).

R&B argues that it is seeking "reconsideration" because of significant changes "in the facts since R&B filed its motion for partial summary judgment on 'successful operation.'" [DE 243 at 17.] R&B argues that the change in "facts" first occurred when Polycon clarified its theory of its breach of contract and breach of warranty claims in its August 30, 2024, briefing and at the September 24, 2024, status conference. In short, according to R&B, reconsideration is justified because Polycon has birthed a new breach of contract theory of liability. [DE 249 at 10.]

To see if this is so, we need to look at Polycon's First Amended Complaint. In that document, Polycon notes that the Terms and Conditions document for the 4/11 and 8/16 machines incorporated "the R&B proposal, Polycon's purchase order as well as the product specifications *and output requirements*." [DE 39 at ¶¶27, 42 (emphasis added).] Polycon defined these documents collectively as "The Agreement." [*Id*.] Polycon then alleged that the 8/16 machine "never met [the] output representations by R&B" and that the 4/11 machine "never functioned in accordance with the Agreement" (that included the output requirements). [*Id*. at ¶¶33, 44.] Polycon also listed as defects for the 4/11 and 8/16 machine the failure to achieve the specific BPM output rates listed in the now infamous Rotary Outputs Sheet. [*Id*. at ¶¶34(b), 46(b).]

Polycon then pled the following contract claim:

> 49. R & B has breached its Agreements with Polycon by failing to design, engineer, manufacture, deliver and install a 4/11 blow molding machine and an 8/16 blow molding machine that conforms to the Agreements the parties have entered into.
>
> 50. R & B's failure to supply machines which conform to the Agreements caused direct damages to Polycon which include, but are not

> limited to, lost profits which R & B knew was the basis of the Agreements with R & B.

[*Id*. at ¶¶49–50.] For its warranty claim, Polycon pled the following:

> 55. R & B breached its express warranty because the 4/11 and the 8/16 machines were each defective as designed, engineered and installed. Both the 4/11 and 8/16 are defective in materials and workmanship, and the 8/16 is not "new". Further, to date, neither has ever been successfully operated in accordance with the Specifications. Neither machine has operated on a regular basis nor consistently produced products conforming to the specifications.
>
> 56. R & B has further breached its express warranty by failing or refusing to perform all work on each machine in a professional and workmanlike manner according to best industry standards and practices.
>
> 57. R & B has further breached its express warranty by supplying a 4/11 and an 8/16 blow molding machine which do not meet the manufacturing output that Polycon required and which R & B represented each of the machines would meet.

[*Id*. at ¶¶55–57.] Polycon also pled that "R&B's warranty fails in its essential purpose."

[*Id*. at ¶59.]

I agree with R&B that Polycon's breach of contract claim does not reference "successful operation", as its warranty claim does, [*id*. at ¶55], nor does it explicitly cite the warranty provision of the Terms & Conditions of Sale as its warranty claim does [*id*. at ¶53]. Nor does Polycon's First Amended Complaint make clear that the breach of warranty claim is pled in the alternative to its breach of contract claim as Polycon now argues. That said, Polycon did plead that the 8/16 and 4/11 machine did not conform to the Agreements and Specifications that it argues include the output rates R&B allegedly promised to Polycon.

15

I am wary to venture too far into the principles of notice pleading as R&B encourages me to do, but they provide some guidance in how to interpret Polycon's First Amended Complaint. I must "accept [Polycon's] complaint at its face value and will not speculate over how it could have some other meaning." *Holman v. Indiana*, 211 F.3d 399, 405 (7th Cir. 2000). And while Polycon "need not use particular words to plead in the alternative, they must use a formulation from which it can be reasonably inferred that this is what they were doing." *Id*. at 407. That said, I must also draw reasonable inferences from the First Amended Complaint in Polycon's favor. *Id*. While the First Amended Complaint may not have articulated Polycon's breach of warranty and contract theories as clearly as Polycon's latter briefing on this issue did, I ultimately am not persuaded that R&B has alleged any "new facts" in the context of a motion to reconsider. That asks me to stretch the limited nature of a motion to reconsider past its breaking point. At most, this is a new legal theory. *See Lovelace v. Gibson*, 21 F.4th 481, 488 (7th Cir. 2021) ("[F]ederal-court plaintiffs are not required to plead legal theories in their complaints.").

In the alternative R&B invites me to enter summary judgment *sua sponte* under Rule 56(f)(3). [DE 249 at 12.] Rule 56(f)(3) provides that "After giving notice and a reasonable time to respond, the court may: consider summary on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(3). The text of Rule 56(f)(3) makes clear that there is both a "notice" requirement and "reasonable time to respond" requirement in addition to identifying the "material facts that may not be genuinely in dispute." Rule 56(f)(3) did not exist in

the Federal Rules of Civil Procedure until 2010, but the practice of *sua sponte* granting summary judgment had been officially sanctioned by the Supreme Court since *Celotex Corp. v. Catrett*. 477 U.S. 317, 326, (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that [it] had to come forward with all of [its] evidence.").

The Seventh Circuit has cautioned that granting summary judgment *sua sponte* is "a hazardous procedure which warrants special caution." *Osler Inst., Inc. v. Forde*, 333 F.3d 832, 836 (7th Cir. 2003); *Goldstein v. Fidelity and Guar. Ins. Underwriters, Inc.*, 86 F.3d 749, 751 (7th Cir. 1996) ("We do not want to encourage district courts to consider summary judgment *sua sponte* because the procedure warrants 'special caution,' and it's often inappropriate."). The Seventh Circuit has also cautioned that considering summary judgment *sua sponte* is "also largely unnecessary, as a district court can always invite a nonmoving party to file a motion for summary judgment in its favor." *Id*.

I find that the requirements of Rule 56(f)(3) have not been met here to consider granting summary judgment *sua sponte* on Polycon's breach of contract claim. For starters, the best practice appears to be for a court to enter a formal Rule 56(f)(3) notice on the record which states that the court is considering entering summary judgment *sua sponte* and which provides the parties an opportunity to respond. *See Coleman v. Peters*, No. 1:23-cv-00617-RLY-MKK, 2023 WL 8818092, at *1 (S.D. Ind. Nov. 28, 2023). I entered no such order here.

17

It is true that I asked the Parties for some briefing on the interplay between the breach of contract claim and the breach of warranty claim, and the Parties complied. [DE 235; DE 238.] But despite my curiosity on how those two theories of liability work together (or not), to be clear, I never indicated that I was considering entering summary judgment *sua sponte* on this issue. At a hearing on September 24, 2024, I commented that Polycon's breach of contract claim may not be sufficient as a matter of law, but, again, I never once informed the Parties that I was considering summary judgment on that claim. To the contrary, I commented how R&B's decision not to seek summary judgment on this issue left the Parties in the position where we may potentially go to trial "on a contract claim and a warranty claim" and R&B suggested it may seek Rule 50 judgment. [DE 245 at 21.] I've made no indication that I was considering summary judgment (because I was not) sufficient to satisfy the notice requirement of Rule 56(f)(3). *See Haley v. Kolbe & Kolbe Millwork Co.*, 863 F.3d 600, 610–13 (7th Cir. 2017) (affirming *sua sponte* entry of summary judgment where court issued an order to show cause why an issue would not foreclose certain claims even though that order did not reference Rule 56(f)(3).).

As a result, I find both a motion to reconsider and Rule 56(f)(3) to be procedurally improper vehicles on the record before me to consider the merits of R&B's arguments concerning Polycon's breach of contract claim. The matter can be fully considered when it is properly put before me either prior to trial in the form of a motion for summary judgment or during a Rule 50 motion.

**Conclusion**

Accordingly, I hereby **DENY** R&B's motion to reconsider [DE 243].

**SO ORDERED**.

ENTERED: March 26, 2025.

/s/ Philip P. Simon
UNITED STATES DISTRICT JUDGE
