UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| POLYCON INDUSTRIES, INC., | ) |
| | ) |
|    Plaintiff & Counter-Defendant, | ) |
| | ) |
| v. | )   Case No. 2:19-CV-485-PPS |
| | ) |
| R&B PLASTICS MACHINERY, LLC, | ) |
| and MONROE MOLD, LLC, | ) |
| | ) |
|    Defendants & Counterclaimants. | ) |

## OPINION AND ORDER

Plaintiff Polycon Industries, Inc. manufactures "blow molded" plastic containers, and Defendant R&B Plastics Machinery, LLC designs and manufactures the machines that make those containers. Polycon purchased two machines from R&B for roughly $4.7 million. This dispute centers on whether R&B delivered machines consistent with what it promised. At long last, in what is effectively the *fifth* motion for summary judgment in this case, a question fundamental to Polycon's theory of the case is squarely before the Court: Can Polycon's breach of contract and breach of warranty claims coexist when they are premised upon the same contractual language found in the warranty? Indiana law is clear that they cannot. R&B's Motion for Summary Judgment on Polycon's Breach of Contract Claim will therefore be granted.

### Background

The question of whether Polycon's breach of contract and warranty claims can coexist has been percolating for almost a year now. I will assume familiarity with how

1

the issue first arose and developed, which I described in detail in my March 26, 2025, Opinion denying R&B's Motion to Reconsider. [*See* DE 275 at 10–18.] In that Opinion, I declined R&B's invitation to rule on the merits of R&B's arguments on this matter because the requirements of entering summary judgment *sua sponte* under Rule 56(f)(3) had not been met. [*Id*. at 16–18.] I noted that R&B could bring this argument in its proper form "either prior to trial in the form of a motion for summary judgment or during a Rule 50 motion." [*Id*. at 18.] R&B chose the former option.

Many of the facts relevant to the transaction between R&B and Polycon have been recited in prior summary judgment opinions. [*See* DE 152 at 2–7; DE 236 at 2–7.] There's no need to regurgitate the lengthy background of this transaction and how the current question before the Court arose. But given that this is a fresh summary judgment motion, I will, as required, set out the undisputed facts concerning Polycon's breach of contract and warranty claims that are relevant here.

## Undisputed Facts

In April 2016, Polycon and R&B signed a Terms and Conditions of Sale agreement wherein Polycon agreed to purchase two blow molding machines from R&B. [DE 281 at ¶¶1–2.] Section 3(a) of Terms and Conditions of Sale includes an express warranty:

> (a) Seller warrants that all Equipment and Work furnished pursuant hereto shall: (i) conform to all specifications drawings, samples, and descriptions given (the "Specifications"), (ii) be new and, for a period of one (1) years from the *successful operation* of the Equipment at Purchaser's facility (the "Equipment Warranty Period"), be free from defects in design, material, workmanship, warning and instruction, and (iii) satisfy all relevant governmental and industry standards applicable at the time of shipment.

2

> Inspection tests, and acceptance or use of the Equipment or Work furnished hereunder shall not affect Seller's obligations under this warranty, and such warranty shall survive inspection, tests, acceptance and use.

[*Id.* at ¶4 (quoting DE 59-1 at ¶3(a) (emphasis added)).] Polycon disputes that Section 3(a) "deals only with an express warranty." [*Id.* at ¶3.]

Section 3(a) defines "Specifications" to include "all specifications[,] drawings, samples, and descriptions given." [*Id.* at ¶6 (quoting DE 59-1 at ¶3(a)).] The Parties dispute the list of documents incorporated by the definition of "Specifications," including whether the "Rotary Outputs" sheet is part of the specifications. [*Id.* at ¶8.] The Rotary Outputs sheet provided to Polycon by R&B contains figures that predict or promise what the machines will produce in bottles per minute ("BPM"). [*Id.* at ¶9.] In practice, both machines have underperformed R&B's promised production.

> During the one-year Equipment Warranty Period, R&B agreed to the following:
>
> (f) If the Equipment fails during the Equipment Warranty period, Seller will (i) at Seller'[s] option and at Seller's sole cost and expense, repair or replace the Equipment or part that does not conform to the warranty or description herein contained, or refund the purchase price of such Equipment or part, and (ii) at Seller's sole cost and expense, provide qualified technical consultation by phone, written correspondence or with field service as reasonably necessary to resolve any warranty issue. If Seller requests return of the warranty part, freight costs shall be paid by Seller. Freight costs on warranty parts shipped to the Purchaser shall be prepaid by Seller.

[*Id.* at ¶5 (quoting DE 59-1 at ¶3(f)).] R&B does not dispute that the "successful operation of the Equipment" at Polycon's facility triggers the Equipment Warranty Period. [DE 283 at ¶30.] However, R&B argues there are other mechanisms that could trigger the Equipment Warranty Period, including Polycon's acceptance of the machines and then thereafter getting free warranty repairs on the machines. [*Id.*]

3

The Terms and Conditions of Sale obligated Polycon to make payment for R&B's machines as follows:

> (a) Progress payments shall be required as follows:
> (1) 30% down payment with purchase order.
> (2) 30% due after 50% completion of the Equipment.
> (3) 30% following *successful operation* of the Equipment at Seller's facility and prior to shipment.
> (4) 10% due net 30 days from *successful operation* of the Equipment at Purchaser's facility.

[*Id*. at ¶31 (quoting DE 59-1 at ¶5(a) (emphasis added)).] I emphasize the language "successful operation" in the payment section of the Parties' agreement because it parrots the language used by the Parties in the warranty section of the agreement set out above.

In its First Amended Complaint, Polycon alleged R&B breached the Section 3(a) express warranty in the following ways:

> 55. R & B breached its express warranty because the 4/11 and the 8/16 machines were each defective as designed, engineered and installed. Both the 4/11 and 8/16 are defective in materials and workmanship, and the 8/16 is not "new". Further, to date, neither has ever been successfully operated in accordance with the Specifications. Neither machine has operated on a regular basis nor consistently produced products conforming to the specifications.
>
> 56. R & B has further breached its express warranty by failing or refusing to perform all work on each machine in a professional and workmanlike manner according to best industry standards and practices.
>
> 57. R & B has further breached its express warranty by supplying a 4/11 and an 8/16 blow molding machine which do not meet the manufacturing output that Polycon required and which R & B represented each of the machines would meet.

[DE 281 at ¶10 (quoting DE 39 at ¶¶55–57).]

Polycon also pleaded the following breach of contract claim:

> 49. R & B has breached its Agreements with Polycon by failing to design, engineer, manufacture, deliver and install a 4/11 blow molding machine and an 8/16 blow molding machine that conforms to the Agreements the parties have entered into.
>
> 50. R & B's failure to supply machines which conform to the Agreements caused direct damages to Polycon which include, but are not limited to, lost profits which R & B knew was the basis of the Agreements with R & B.

[*Id*. at ¶11 (quoting DE 39 ¶¶49–50).] Polycon and R&B dispute whether Polycon alleged specific machine defects in support of its breach of contract claim. [*Id*. at ¶12.]

Polycon complained to R&B that the machines Polycon purchased had not achieved "successful operation" at least as early as March 2018. [*Id*. at ¶26.] Despite this, Polycon has used R&B's machines to produce, quite literally, millions of bottles which were later sold to its various customers. [*Id*. at ¶27.]

## Standard of Review

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party opposing summary judgment may not rely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (citation omitted).

## Discussion

Let's start with some basics. Indiana's version of the Uniform Commercial Code (the "UCC") applies to "transactions in goods." Ind. Code § 26-1-2-102. The term "goods" means "all things (including specially manufactured goods) which are movable . . . ." *Id*. § 105(1). The machines that were sold to Polycon by R&B are plainly "goods." In a contract that involves both goods and services, if the "goods aspects predominate" over the services aspect then the UCC applies to the goods aspect of the agreement. *Id*. § 102(b). Because this case principally relates to the sale of machines, and that portion of the Parties' agreement predominates over the services aspect of the agreement, the UCC covers what is at issue in this case.

R&B advances two arguments for why Polycon's breach of contract claim cannot proceed. First, R&B argues that Polycon's breach of contract claim is based on the same contractual provision and alleged breaches as Polycon's breach of warranty claim, which is improper under Indiana law. Second, R&B argues that because its contract with Polycon is covered by the UCC, Polycon cannot pursue a common law breach of contract claim. Instead, Polycon is limited to a UCC breach of contract claim which occurs when either (1) the seller fails to make delivery or (2) the buyer rightfully rejects the goods or revokes acceptance. *Id*. § 711.

Polycon responds with heated and over the top rhetoric that is entirely unhelpful to the resolution of the merits of the motion. In year six of this dispute, temperatures may be rising and patience fraying between the Parties, but hyperbolic arguments don't help the Court in resolving disputes. Regardless of when and how this question of the

6

coexistence of Polycon's breach of contract and warranty claims arose (or should have arisen), it is now squarely before the Court for resolution. Relitigating the method by which this question got here, as Polycon does at length in its response [*see* DE 280 at 5–10], is not helpful at this juncture.

Setting the bombast aside, Polycon's arguments can be summarized as follows: *first,* that "successful operation" is a condition precedent to trigger the Equipment Warranty Period, and because there is a fact question about what is "successful operation", the warranty claim only exists if a jury has found that the machines achieved successful operation. *Second,* Polycon also relies on Ind. Code § 26-1-2-303 to counter R&B's UCC argument. Specifically, Polycon argues that the Parties relied upon Section 2-203 to "shift the point at which the warranty became effective to the point of 'successful operation.'" [DE 280 at 15.]

I.     **Coexistence of Breach of Contract and Warranty Claims**

Under Indiana law, a "warranty is a promise relating to past or existing fact that incorporates a commitment by the promisor that he will be responsible if the facts are not as manifested." *Johnson v. Scandia Assocs., Inc.,* 717 N.E.2d 24, 28 (Ind. 1999) (citation omitted). So, for example, in this case, R&B warranted in Section 3(a) of the contract that the machines will "conform to all specifications" and be "free from defects[.]" [DE 59-1 at ¶3(a).] As in this case, warranties are "usually collateral to the principal contract, although not necessarily so." *Zawistoski v. Gene B. Glick Co., Inc.,* 727 N.E.2d 790, 792 (Ind. Ct. App. 2000) (quoting *Nelson v. Marchand,* 691 N.E.2d 1264, 1271 n.8 (Ind. Ct. App. 1998)). For this reason, claims for breach of contract and breach of warranty are

"closely related" but "are not identical." *Nelson*, 691 N.E.2d at 1271 n.8. And "[i]n the proper case, there is no doubt that both theories could be maintained." *Zawistoski*, 727 N.E.2d at 792 n.1; *Martin v. Thor Motor Coach Inc.*, 602 F.Supp.3d 1087, 1094 (N.D. Ind. 2022) ("Indiana has long recognized the coexistence of contract and warranty claims."). In *Martin*, the court used the following example to explain the difference between these two claims: "a contract might consist of the promise to build a home, and the warranty would consist of the promise to perform this other promise in a workmanlike manner." *Id*. at 1095.

Claims for a breach of warranty and breach of contract under Indiana's UCC provide for different remedies. Suppose a vendor fails to deliver goods as promised. Under the UCC, the buyer can sue for breach of contract, and as a remedy he may "cover" (as described in Ind. Code § 26-1-2-712), meaning recover the difference between the market price at breach and the cost under the contract. *See* Ind. Code § 26-1-2-711(1)(a). In the alternative, a buyer can recover damages for nondelivery (as described in Ind. Code § 26-1-2-713). *Id*. § 711(1)(b). He also has the option (if they can be identified) to recover the goods or obtain specific performance under certain circumstances. *Id*. § 711(2).

By contrast, the remedies available for a breach of warranty under the UCC are "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." *Id*. § 714(2). A

buyer may also recover incidental and consequential damages in some cases. *Id.* § 714(3).

But when a party seeks relief for both a breach of contract and a breach of warranty "based on the same contractual provision . . . [the causes of action] are the same" and cannot coexist. *Smith v. Nexus RVs, LLC*, 468 F.Supp.3d 1012, 1024 (N.D. Ind. 2020). In other words, the claims "merge" because "the two causes of action are really the same." *Martin*, 602 F.Supp.3d at 1095. The key question is whether a plaintiff alleges a breach of warranty and a breach of contract based on the same contractual provision. If the answer is yes, then a plaintiff has "just repackaged their warranty claim as a contract claim." *Litsinger v. Forest River, Inc.*, 536 F.Supp.3d 334, 359 (N.D. Ind. 2021) (granting summary judgment on breach of contract claim). The Fifth Circuit in *Baker Hughes Process & Pipeline Servs., L.L.C. v. UE Compression, L.L.C.* provides a helpful overview of the difference, and risk of conflation, between these two claims. 938 F.3d 661, 667 (5th Cir. 2019) (noting "the critical factor in whether the buyer has a breach of contract or breach of warranty claim is whether the buyer has finally accepted the goods.") (citation omitted).

With all this as background, I turn to evaluate the source of Polycon's alleged breach of contract and warranty claims. Polycon alleges R&B breached its contract with Polycon because R&B's machines failed to achieve "successful operation" as required by Section 3(a) of the Terms and Conditions of Sale. [DE 280 at 2.] Polycon argues that R&B's machines achieving "successful operation" triggered both the commencement of the "Equipment Warranty Period" described in Section 3(a) and the final two payments

9

under Section 5(a) of the Terms and Conditions of Sale. In its First Amended Complaint, Polycon pleaded additional specific defects with the machines, including that they did not achieve the output rates purportedly contracted for. [*See* DE 39 at ¶¶34, 46.] But even that claim is encompassed within the express warranty because the warranty incorporates the "specifications" into its terms. Recall that the warranty states that "(a) Seller warrants that all Equipment and Work furnished pursuant hereto shall: (i) conform to all specifications . . . ." [DE 59-1 at ¶3(a).] A reasonable jury could readily find R&B's predicted output rate for the two machines to be part of the specifications.

For its warranty claim, Polycon alleges R&B breached *the very same provision* of the Terms and Conditions of Sale: Section 3(a). [DE 281 at ¶23.] Polycon alleges R&B breached the warranty in Section 3(a) in three ways. First, the machines were defective as designed, engineered and installed, defective in materials and workmanship, were not "new", and never successfully operated. [DE 39 at ¶55.] Second, R&B failed or refused to perform all work on the machines "in a professional and workmanlike manner according to best industry standards and practices." [*Id*. at ¶56.] And third, R&B's machines did not meet the represented output rates. [*Id*. at ¶57.]

Polycon argues it pleaded its warranty and contract claims in the alternative because the "limited warranty kicks in only if 'successful operation' is achieved." [DE 280 at 2.][1] But when viewed side by side, Polycon's assertions for why R&B's machines

---

[1] R&B argues that Polycon did not plead its contract and warranty claims in the alternative and has only pivoted to this position in later briefing on this question. [DE 277 at 8.] I previously dismissed this argument in my ruling denying R&B's motion to reconsider. [DE 275 at 15–16.] Polycon's First Amended Complaint did not explicitly plead breach of warranty and contract in the alternative, but given my duty to draw reasonable inferences in Polycon's favor and that Polycon "need not use particular words to

10

did not achieve "successful operation" are identical for its breach of contract and breach of warranty claims. Polycon relies upon the same failure to achieve "successful operation" in Section 3(a) of the Terms and Conditions of Sale for both its claims. Put another way, Polycon asserts the same breach "based on the same contractual provision." *Smith*, 468 F.Supp.3d at 1024. Accordingly, Polycon's breach of contract claim is a repackaged version of its breach of warranty claim and cannot survive summary judgment. A review of Indiana case law confirms this straightforward understanding of the Parties' contract and how Polycon has pleaded and defended its claims. It is telling that Polycon largely ducks the merits of this issue in its response.

In *Zawistoski*, the Indiana Court of Appeals considered an appeal of a grant of partial summary judgment on breach of warranty and contract claims. The plaintiff tripped on a portion of raised sidewalk in the common area of her apartment complex. 727 N.E.2d at 791. She alleged both breach of contract and breach of warranty claims against the landlord. Both claims relied upon the same paragraph in the plaintiff's lease agreement wherein the landlord agreed to "maintain the common areas" in safe condition. *Id*. at 792–93. The court concluded the plaintiff failed to "explain how these two different theories apply in this case" and regarded the claims as the same because they relied upon the same contractual provision. *Id*. at 792.

Polycon seeks to diminish the importance of *Zawistoski* by arguing that it never resolved the question of whether a breach of warranty and contract claim could emerge

---

plead in the alternative", *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000), I see no reason to change this ruling. Polycon's First Amended Complaint did not violate the pleading requirements of Rule 8(d)(2).

11

from a commercial agreement. [DE 280 at 11.] This argument seeks to muddy an otherwise clear conclusion by the court. The court commented "there is no doubt that both [breach of warranty and contract] theories could be maintained" in the "proper case." *Zawistoski*, 727 N.E.2d at 792 n.1. This was not a "proper case", however, because both theories relied upon the same contractual provision. The *Zawistoski* court did not engage in substantial analysis on this point, but the takeaway remains clear: Polycon cannot assert both breach of warranty and contract theories based on the same Section 3(a) provision of the Terms and Conditions of Sale.

A few other examples bear mentioning. In *Litsinger*, the court granted summary judgment for the defendant on plaintiffs' breach of contract claim. 536 F.Supp.3d at 359. As Polycon did here, the plaintiffs pleaded (among other claims) both a breach of contract and breach of express warranty. The plaintiffs pleaded that the defendant "breached [their] contract by failing to repair the RV's defects within the warranty period." *Id*. Though recognizing that the two claims could co-exist, the court determined that plaintiffs' breach of contract claim merely "repackaged" their warranty claim because the asserted breach was of the warranty provision. *Id*. The same is true here. Polycon's breach of contract claim relies upon a breach of the language in the express warranty. As in *Litsinger*, Polycon "never argue[s] another theory." *Id*; *see also Smith*, 468 F.Supp.3d at 1024 (granting summary judgment on breach of contract claim "based on the same contractual provision" as the breach of warranty claim).

Polycon's efforts to distinguish *Litsinger* and *Smith* are halfhearted and unpersuasive. Polycon argues that the contracts in *Litsinger* and *Smith*, which were

between large corporations and consumers who purchased RVs, were routine, one-sided consumer sales agreements. [DE 280 at 10.] By contrast, the Parties here are sophisticated commercial actors who negotiated their contract. [*Id*.] But Polycon's quibbles with the facts and bargaining power of the parties in these RV cases is nothing more than a head fake; it ducks the concept that the courts granted summary judgment on the contract claims because they relied upon the same contractual provision as the warranty claims. Polycon fails to present a reasoned response to why the straightforward application of Indiana law in these cases does not apply here as well. In fact, Polycon does not present a single analogous case where a court applied Indiana law to find that a breach of contract and warranty claim were, in fact, distinct.

Polycon's next argument is that "successful operation" operates as a condition precedent to commencement of the warranty. In support of this argument, Polycon cites a prior summary judgment ruling in this case and *Town of Plainfield v. Paden Eng'g Co., Inc.*, 943 N.E.2d 904 (Ind. Ct. App. 2011). In *Town of Plainfield*, the appellate court affirmed the trial court's grant of summary judgment on a common law breach of contract claim based on the plaintiff's failure to demonstrate they satisfied the conditions precedent in a construction contract. *Id*. at 914. Aside from its rote explanation of a condition precedent, the case is unhelpful in this context.

In an April 2023 opinion denying R&B's motion for partial summary judgment I reasoned that reading Section 3(a) in its entirety "suggests that the warranty period does not begin until [R&B's] machines . . . operate successfully at Polycon's facility." [DE 152 at 11.] Two years later, I continue to believe this to be the most logical, coherent

way to interpret Section 3(a). But that reading does not somehow permit Polycon to bring a common law breach of contract claim based on the same provision as its warranty claim in a case governed by Indiana's UCC.

Instead, if R&B's machines truly never achieved "successful operation" at Polycon's facilities, then Polycon is left with its claim that the Section 3(a) warranty failed of its essential purpose. [DE 39 at ¶59.] The Indiana Supreme Court recognized this type of cause of action in *Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd.*, 134 N.E.3d 370, 379 n.3 (Ind. 2019). But under Indiana law, such a claim is still based on the UCC. *Martin*, 602 F.Supp.3d at 1097. Indeed, the UCC itself recognizes as much. *See* Ind. Code § 26-1-2-719(2). That provision states that when a "circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in IC 26-1." *Id*. What this means is that when a warranty's remedy fails its essential purpose, the plaintiff has available to him the whole panoply of remedies in the UCC. *Martin*, 602 F.Supp.3d at 1093. In short, in this case, as in *Perry v. Gulf Stream Coach, Inc.*, 814 N.E.2d 634, 642-44 (Ind. Ct. App. 2004), there are triable issues of fact whether the warranty set out in Section 3(a) of the Parties' agreement failed its essential purpose. In other words, whether one labels it a "warranty claim" or a "breach of contract claim", the claim that the warranty in this case failed its essential purpose remains available to Polycon. *See Martin*, 602 F.Supp.3d at 1095.

**II.    UCC Argument**

R&B argues Indiana's UCC precludes Polycon from pursuing a breach of contract claim because R&B delivered the machines at issue to Polycon and Polycon

14

neither rejected nor timely revoked its acceptance of those machines. Other than a claim that a warranty failed its essential purpose (as just discussed), a buyer may pursue a breach of contract claim under Indiana's UCC if (1) the seller fails to deliver the goods or (2) the buyer properly rejects or timely revokes acceptance of the goods. Ind. Code § 26-1-2-711. But if a buyer accepts delivered goods, neither rejects or timely revokes acceptance, and later discovers a "nonconformity of tender", they instead may bring a claim for breach of warranty. *Id.* § 714.

Neither basis for a breach of contract claim under § 2-711 exists here. Polycon has never argued that it rejected either machine. In fact, the opposite is true. Polycon has repeatedly represented that it used the machines over the course of several years. [DE 281 at ¶27.] And while Polycon alleged that R&B *delayed* in the delivery of the machines, it has not claimed that R&B *failed* to make delivery. [DE 198 at 8.] Indeed, Polycon alleged delivery occurred in January 2017. [*Id.* at 10.] From these undisputed facts I find that Polycon has not asserted a breach of contract claim under Ind. Code § 26-1-2-711.

Instead of the two bases for asserting a breach of contract under Ind. Code § 26-1-2-711, Polycon instead relies on § 2-303 to argue that the Parties agreed to modify when the warranty begins. Section 2-303 provides that parties to a contract "may not only shift the allocation [of risk] but may also divide the risk or burden" as is otherwise standard under Indiana's UCC. Ind. Code § 26-1-2-303. This provision codifies the principle that "parties may modify or allocate 'unless otherwise agreed' risks or burdens imposed by [Indiana's UCC] as they desire, always subject, of course, to the provisions on unconscionability." *Id*. Official Code Comment 1. According to Polycon,

15

the Parties here relied on this principle "to shift the point at which the warranty became effective to the point of 'successful operation.'" [DE 280 at 15.]

R&B counters that a proper reading of the Parties' contract demonstrates that Polycon's remedy for a failure of the machines to achieve "successful operation" is to withhold payment. That's sensible because the exact same language—"successful operation"—is used in both the warranty section of the agreement and the payment section of the agreement. I must enforce an interpretation of the Parties' contract that "harmonizes all its provisions." *Ryan v. TCI Architects/Eng'rs/Contractors, Inc.*, 72 N.E.3d 908, 914 (Ind. 2017) (citing *Kelly v. Smith*, 611 N.E.2d 118, 121 (Ind. 1993)). Here, the Terms and Conditions of Sale provide Polycon with the remedy of withholding the final two installment payments worth 40% of the total purchase price for R&B's machines if they fail to achieve "successful operation." [DE 59-1 at ¶5(a)(3), (4).] Indeed, Polycon chose to withhold full payment for the machines, which is the subject of R&B's counterclaim. [*See* DE 20.] A logical reading of the Parties' contract provides that Polycon is entitled to either warranty repairs under Section 3(a) if the machines achieved "successful operation" or withholding of payment under Section 5(a) if the machines failed to do so.

Polycon's assertion of the freedom to fashion a contract with R&B as the Parties saw fit is of course true. But this blanket assertion of a bedrock principle of contract law does nothing to save Polycon's amorphous breach of contract claim that is untethered to Indiana's UCC. In short, Polycon has a claim for breach of warranty and a separate claim (in the alternative) that the warranty failed essential purpose. What it does not

16

have is some standalone breach of contract claim that is based on the very same language as its warranty claim.

## Conclusion

Accordingly, R&B's Motion for Summary Judgment on Polycon's Breach of Contract Claim [DE 276] is GRANTED.

**SO ORDERED**.

ENTERED: July 8, 2025.

                                                /s/ Philip P. Simon
                                                UNITED STATES DISTRICT JUDGE